U. S. Short, Administrator of the Estate of Mollie
Short, Deceased, Appellee, v. City of East St. Louis,
Appellant.

1.   EVIDENCE—*what not undue restriction of cross-examination.*
Cross-examination is not unduly restricted by preventing the answer-
ing of questions calling for testimony which had been fully given
in answer to other questions permitted.

Action in case for death caused by alleged wrongful act. Appeal
from the Circuit Court of St. Clair county; the Hon. R. D. W.
HOLDER, Judge, presiding. Heard in this court at the August term,
1907. Affirmed. Opinion filed March 18, 1908.

MAURICE V. JOYCE, for appellant.

W. E. KNOWLES and KEEFE & SULLIVAN, for ap-
pellee.

MR. JUSTICE CREIGHTON delivered the opinion of the
court.

This was an action in case, in the Circuit Court of
St. Clair county, by appellee against appellant, to re-
cover for the death of appellee's intestate resulting
from an injury caused by a defective sidewalk, along

one of the public streets of appellant. Trial by jury. Verdict and judgment in favor of appellee for $5,700.

Upon this appeal one ruling of the trial court with respect to the admission of evidence is pointed out and challenged; with that exception, the appeal presents only questions of fact.

Counsel for appellee present a very full statement of the facts of the case, which we find from the evidence to be substantially accurate, and we adopt much of it in the following statement.

The sidewalk in question extends along the westerly side of Third street in the city of East St. Louis, and runs practically north and south. Third street is in the business center of the city, and the walk in question is one of its much frequented sidewalks. The natural surface of the ground where Third street is located is very low, so that in constructing the street a levee of eight feet in height was thrown up, held in place by retaining walls, and on top of this levee the street was built. Along the side of the street is a stone curbing, on which the easterly side of the sidewalk rests. The walk is about twelve feet in width and the space underneath the walk has never been filled, so that from the walk down to the ground beneath it, there is a drop of about six or eight feet. Many years ago a line of telephone poles were placed along this walk inside of the curbing. The walk was built of planks, extending crosswise, and these planks extended over the curb about four inches, and the curb, on which they rested, was from five to six inches wide, so that the outer edge of the pole was in the neighborhood of ten inches west of or in from the outside edge of the walk. The cyclone that occurred in 1896, blew down one of these poles about 180 feet north of the intersection of Third street with Broadway—a street that crosses Third street at right angles. When this pole blew down, it was broken off about two feet below the sidewalk, leaving a hole in the walk that measured eleven inches the narrow way

and fifteen and one-half inches from the curb toward the property line. From the outer edge of the walk to the side of the hole nearest the property line was a distance of two feet, so that this hole extended into the sidewalk about two feet from its outer edge. When the pole in question broke off it left a rotten snag remaining about two feet below the surface of the walk, as above stated, so that a person stepping into the hole, if he should step upon this snag, would go down about two feet, but in case he missed the snag the distance to the ground would be from six to eight feet. Soon after the pole blew down, someone nailed three boards, about four or five inches wide and a half inch thick, which had been taken from a dry goods box, over this hole; and the evidence tended to show that there had been no other or further repair made upon this defect from the time the pole blew down in 1896 until after the injury that resulted in the death of Mrs. Short. At the time of her injury, Mrs. Short was twenty-six years old, her normal weight was about 160 pounds, and she was in perfect health. She was the wife of Dr. U. S. Short, the administrator, a practicing physician of the city of East St. Louis. They had been married about two years, and at the time of her injury she was pregnant with an eight months' child. On account of her pregnancy she was attempting to do her necessary shopping in the evening, and on the evening of the seventeenth of November, 1906, she left her home and started down Third street, a few blocks distant, to do some shopping. It was after dark and drizzling rain at the time, and as she approached the hole in question, the existence of which was unknown to her, she met one or two men who were traveling in the opposite direction on the same walk, carrying an umbrella, held in front of them to protect them from the rain, and in consequence thereof, did not notice the approach of Mrs. Short. As she came near them she stepped toward the outer portion of the walk to let them pass, and in doing so fell into the

hole above described. At the time she fell into this
hole there were a number of persons standing in front
of a labor agency office that fronted this sidewalk a
few feet away. These persons saw her fall into the
hole, and, hearing her scream, ran to her assistance.
When they got to her she was lying on her side with
her face on the sidewalk, just as she had fallen. Her
left limb was still in the hole and she was crying. Two
of the persons first to reach her, lifted her out of the
hole. She was not able to stand and they carried her
down to a store in the neighborhood and sent for an
ambulance. She was taken to her home immediately
and put to bed. Her husband, who is a physician him-
self, called to his assistance Doctor Culbertson, also
a practicing physician of the city of East St. Louis,
and gave her immediate attention. Her hip was dis-
located, her ankle sprained and she was internally in-
jured. Soon after being removed from the hole, pains
denoting premature labor, came ·on, and the doctors
worked ·to fight off a premature birth, which, how-
ever, resulted four days later, notwithstanding their
efforts. From the time she was taken home, the testi-
mony of the physicians in charge shows that she was
very sick and so continued until her death. She was
suffering from nervous shock and internal injuries oc-
casioned by her fall, which brought on pernicious
vomiting that continued uncontrollable until her
death. On the night of November 22, 1906, premature
birth occurred, and on account of her extreme weak-
ness and exhaustion from the injuries she had received
she was unable to withstand the shock and labor, and
died about an hour after giving birth to the child, leav-
ing her husband and infant child surviving.

With respect to the hole in the sidewalk complained
of in the declaration and mentioned and described
in the foregoing statement, the evidence tends strongly
to prove and the jury was warranted in finding that
the boards that had been nailed over this hole had been
off, so that the hole was entirely uncovered for a period

Short v. City of East St. Louis.

of from two to three weeks prior to the injury.   Ten witnesses testify positively to this state of facts.

During the cross-examination of Dr. Culbertson he was asked by counsel for appellant the following question: "Q. A woman, eight months gone, falling through a hole in the sidewalk, would the mere fact of her falling through that hole produce *post-partum* hemorrhage?"   To this question the trial court sustained an objection, and counsel insist this was a material error.

The witness had just previously stated: "The mere fact that she fell into the hole in the sidewalk might not alone produce a *post-partum* hemorrhage.   I could not say whether it would or not; if the lady was pained and disturbed and had premature labor, she might have a *post-partum* hemorrhage following it; the *post-partum* hemorrhage would be due indirectly to the accident, it would not be directly due to the birth of the child."   And following the question he stated: "The mere fact that she fell through this hole in the sidewalk seems to be the leading cause of her *post-partum* hemorrhage, it started the premature labor; the mere fact that there was a premature labor does not always produce *post-partum* hemorrhage, there can be premature labor without *post-partum* hemorrhage."   It is quite apparent that all that was of any value in the question was fully answered by the witness' previous statement and subsequent reply.

We are of opinion that the trial court did not err in refusing to direct a verdict in favor of appellant, also that the ruling of the court in sustaining the objection to the above quoted question was not material error, and that the amount of the damages awarded is not so great as to warrant us in disturbing the judgment on that account.

The judgment of the Circuit Court is affirmed.

*Affirmed.*